### Leslie A. CROSBY

v.

### TOWN OF BELGRADE.

Supreme Judicial Court of Maine.

Argued May 9, 1989.

Decided Aug. 10, 1989.

John E. Nale (orally), Nale & Nale, Waterville, for plaintiff.

Patrick J. Scully (orally), Bernstein, Shur, Sawyer & Nelson, Portland, for defendant.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD and COLLINS, JJ.

McKUSICK, Chief Justice.

On March 3, 1988, the Planning Board of the Town of Belgrade denied plaintiff Leslie Crosby a permit to build a house on her land on Great Pond, on the ground that the lot did not meet the current zoning requirement of a 200–foot lakeshore frontage. Almost eight years earlier, however, the Belgrade Zoning Board of Appeals had ruled that the same lot, then owned by Crosby's parents, Richard and Audrey Cooke, was grandfathered as a nonconforming lot of record. We affirm the judgment of the Superior Court (Kennebec County, *Alexander, J.*) holding that the Town is bound by the 1980 decision and ordering the Town to issue Crosby's building permit provided she meets all other zoning requirements.

The Superior Court decided this case on stipulated facts. In two separate transactions in September of 1969, the Cookes bought four adjacent parcels of vacant land in the Horse Point Shores subdivision on

Great Pond.[1] Taken together, these parcels encompassed two of the lots described in the recorded subdivision plan, each with 100 feet of lakeshore frontage. In 1970 the Cookes built a cottage on one of those lots. That cottage conformed fully with all area, frontage, and setback requirements then in force and would have remained conforming even if the vacant lot had been sold to someone else. In 1977, however, the Town amended its Shoreland Zoning Ordinance to raise the minimum frontage from 100 feet to 200 feet; after that date the Cooke land would be conforming only if the improved and vacant lots together were treated as a single parcel. *See* Belgrade, Me., Revised Shoreland Zoning Ordinance § 11(H)(3) (Mar. 1, 1975, as amended Mar. 5, 1977).

Although it seems that the two lots had never been in separate ownership, they were designated as separate lots on a recorded subdivision plan as well as on the Belgrade tax maps. On February 1, 1980, apparently having reason to believe that town officials were taking a contrary position, the Cookes wrote the Belgrade selectmen, the body then vested with all relevant code enforcement duties, arguing that their lots must be treated as grandfathered nonconforming lots. According to the Cookes, it would be unfair to subject them to the 200–foot frontage requirement because that would make their vacant lot "virtually worthless." The Cookes requested authorization to build a second cottage and to sell one of their lots. On March 20, while awaiting a reply, they listed their cottage and its lot with a real estate broker. On April 15, on behalf of the selectmen, the Town's administrative assistant responded that a sale of either "part of" their "conforming lot" would create a nonconforming lot and would therefore be unlawful.

The Cookes then appealed to the Belgrade Zoning Board of Appeals. The Board held a public hearing on June 24 on the Cookes' "request for relief from the Code Enforcement Officer[s'] citation of the appellants creating non-conforming lots." On July 15, 1980, the Board issued a two-page decision with detailed findings of fact and conclusions of law. The Board held that the Cookes' two lots were grandfathered as nonconforming lots of record, that "[t]he proposed conveyance of either lot ... to a single owner conforms to th[e applicable frontage] requirement," and that the selectmen in ruling otherwise "acted contrary to the provisions of the Belgrade Shoreland Zoning Ordinance." The Board advised the Cookes "to return to the Code Enforcement Officer/Selectmen for a decision reversing the citation issued April 15, 1980."

The Belgrade selectmen did not contest the Board's decision in court. Neither, on the other hand, did they reconsider their own ruling, despite a written request by the Cookes. Without the Town's interference or endorsement, the Cookes kept the cottage on the market at least through 1982, but it did not sell. After 1982 the stipulated facts are silent until July 29, 1987, when the Cookes applied for a building permit for the vacant lot. The Belgrade Planning Board, which had by then been assigned the selectmen's former code enforcement role, denied the permit on multiple grounds, including the asserted merger of the vacant lot with the improved lot. The Cookes then placed the vacant lot on the market. It too did not sell, and the Cookes conveyed the lot to their daughter, plaintiff Crosby, on October 23, 1987. The following January she applied for a building permit, which the Planning Board denied on March 3, 1988, citing only the lakeshore frontage and current lot merger provisions of the shoreland ordinance as its basis for denial.[2]

1. Initially, the Cookes owned the land on Great Pond in common with another couple, who moved to California in 1973 and conveyed their undivided interest in the land and cottage to the Cookes.

2. The agreed statement of facts the parties submitted to the Superior Court incorporated the 1977 version of the Belgrade Shoreland Zoning Ordinance, which does not contain the subsequently adopted lot merger clause cited by the Planning Board. The parties have not put that lot merger clause into the record by either proof or stipulation. *See Summit Realty, Inc. v. Gipe,* 315 A.2d 428, 429–30 (Me.1974) (municipal ordinances are not subject to judicial notice). In

Crosby sought judicial review of the Planning Board denial directly in the Superior Court under M.R.Civ.P. 80B.[3] Deciding the case on the basis of an agreed statement of facts, the court ruled

that the decision of the Belgrade Zoning Board of Appeals of July 15, 1980 is valid and binding upon the parties to this appeal as a valid and final determination that the Plaintiff's lot is a legal, non-conforming lot of record.

The Superior Court ordered the Planning Board to issue the building permit requested, unless it found an independent ground for denial. The Planning Board subsequently met and determined that insufficient lakeshore frontage was its sole ground for denying the permit and the Town has so stipulated on appeal.

■ We affirm the judgment. In general, a final adjudication in an administrative proceeding has the same preclusive effect as a final adjudication in a former court proceeding. *See Town of North Berwick v. Jones*, 534 A.2d 667, 670 (Me.1987). Whether the lot in question is exempt from the frontage requirement is in no way affected by the conveyance from the Cookes to Crosby; the prior adverse adjudication binds the Town no more and no less than it would bind the Town if the Cookes still owned the land. *See Bourgeois v. Sprague*, 390 A.2d 464, 466 (Me.1978); *Restatement (Second) of Judgments* § 29 (1982).

On appeal the Town advances only two bases for its claim that the Board's 1980 decision is not *res judicata:* (1) that the Board's decision was a nullity because the selectmen's letter reviewed by the Board was merely an advisory opinion nonreviewable by the Board and (2) that the Town lacked standing to seek direct judicial review of the Board's 1980 decision and could therefore correct an erroneous decision only on collateral attack as in the present proceeding. We conclude that neither of these contentions defeats the *res judicata* effect of the Board's adjudication that Crosby's lot is grandfathered.

First, the Town's jurisdictional challenge, whether or not it could have succeeded in 1980, comes too late by some eight years. Jurisdiction is not subject to collateral attack once a judgment has become· final unless there was a "manifest abuse of authority," "substantial[ ] infringe[ment of] the authority of another tribunal," or a need to entertain a belated challenge "as a matter of procedural fairness." *Standish Tel. Co. v. Saco River Tel. & Tel. Co.*, 555 A.2d 478, 481 (Me.1989) (quoting *Restatement (Second) of Judgments* § 12). None of those grounds is present in the case at bar.

■ In 1980 the selectmen did not object in any way to the Board's authority to decide the Cookes' appeal from the selectmen's ruling; everyone concerned regarded the selectmen's letter ordering the Cookes not to divide their land as an appealable land use citation issued pursuant to section 12(D)(2) of the Shoreland Zoning Ordinance. The appeal before the Board was conducted with full procedural regularity, and the hearing began with a thorough discussion of the issues of notice, standing, and jurisdiction. The Board's adjudication took the form of a written decision, detailed and unambiguous in its terms. Here, as did the administrative agency involved in *Standish Telephone*, the Board acted in an adjudicatory manner and issued a written judgment. Although the selectmen thereafter did not act on the Board's order, neither did they dispute any aspect of its legitimacy. The decision was not so plainly beyond the Board's jurisdiction as to render it "a manifest abuse of authority," nor did the Board lack an informed basis for its decision. The Board's order did not "substantially infringe on the au-

any event, at oral argument the Town expressly disavowed any contention that the subsequent ordinance amendment superseded the 1980 Board of Appeals decision.

**3.** The Town has not made any argument of nonexhaustion of administrative remedies ei-

ther in the Superior Court or in its appellate briefs. The Town has therefore waived any such issue on appeal. *See Chadwick–BaRoss, Inc. v. Martin Marietta Corp.*, 483 A.2d 711, 717 (Me.1984).

thority of another tribunal or agency of government." *Standish Tel. Co. v. Saco River Tel. & Tel. Co.*, 555 A.2d at 482; *Restatement (Second) of Judgments* §§ 12(1), (2). The issue of the Board's jurisdiction is *res judicata* for the purposes of this appeal.

■ Alternatively, the Town contends that the Board's decision cannot estop the Town collaterally because the Town had no standing to challenge that decision directly by appeal to the Superior Court. We need not decide whether nonappealability by the Town would defeat the *res judicata* effect of the Board's decision because as a matter of law the Town could have appealed the 1980 decision. Under Maine law, "[a]n appeal may be taken ... by *any party* to Superior Court from any order, relief, or denial [by a zoning board of appeals] in accordance with the Maine Rules of Civil Procedure, Rule 80B." 30 M.R.S.A. § 2411(3)(F) (1978), *recodified as amended at* 30–A M.R.S.A. § 2691(3)(G) (Pamph. 1988) (emphasis added). The municipal officers and the "planning board, agency or office" responsible for enforcing the zoning ordinance are in their official capacities parties to all proceedings before the board of appeals. *Id.* § 4963(4), *recodified as amended at* 30–A M.R.S.A. § 4504(4). In authorizing those parties representing the Town to appeal to the Superior Court when aggrieved by a decision of the board of appeals, the law of Maine accords with the practice prevailing in other states. *See* 4 R. Anderson, *American Law of Zoning* § 27.20 (3d ed. 1986) ("A municipality may be an aggrieved person within the meaning of statutes authorizing such a person to institute proceedings to review a decision of a board of adjustment"); 3 E. Ziegler, *Rathkopf's Law of Zoning and Planning* § 43.05[1] (4th ed. 1989) ("In those states in which the zoning enabling act is patterned after the Standard State Zoning Enabling Act, a municipality is considered to have standing to seek judicial review of any decision of the board of adjustment as a matter of law") (footnote omitted). The municipal officers therefore had standing in 1980 to appeal in the name of the Town the adverse decision of the Town's board of appeals.

Because a board of appeals performs a quasi-judicial function, the parties to a Rule 80B action reviewing the board's decision are the parties that had appeared before the board. *See Town of Boothbay v. Russell*, 410 A.2d 554, 560 (Me.1980). Thus, contrary to the Town's contention, had it through its appropriate officers appealed the 1980 zoning board decision, it would not be suing itself; it would have been suing the Cookes, the prevailing parties before the Board of Appeals. As a matter of prudent administration, a municipality does not lightly exercise the power to challenge a decision of its own adjudicatory board of appeals, but it retains that power in the exceptional case where the municipal officers believe the board of appeals is manifestly wrong, just as the State may in comparable circumstances appeal an adverse decision of a state court. If the town does not appeal to the Superior Court from an adverse decision of the board of appeals, that decision becomes binding on the municipality as a final judgment. *See Spain v. City of Brewer*, 474 A.2d 496, 499 (Me. 1984).

The Town has advanced no valid reason why the Board's 1980 decision is not *res judicata*. The Board's ruling that Crosby's lot is grandfathered therefore is binding upon the Town and its zoning enforcement officials. There being no independent ground for denial, Crosby is entitled to her building permit.

The entry is:

Judgment affirmed.

All concurring.