STATE OF MAINE
YORK, ss.

SUPERIOR COURT
Civil Action
Docket No. RE-18-56

JOHN BARTH,

      Plaintiff,

v.

TOWN OF WATERBORO et al.,

      Defendants.

)
)
)
)
)
)
)
)
)
)
)
)

**DECISION AND ORDER
ON PENDING MOTIONS**

John Barth filed a three-count complaint against the Town of Waterboro ("Town"),

Gary Lamb, and ten unnamed individuals, alleging that the Town's Zoning Board of

Appeals ("ZBA") unlawfully denied his application for a building permit to continue

construction of a residence in Waterboro (Count I); that this denial was an

unconstitutional taking of his property without just compensation (Count II); and that

Lamb, acting in his official capacity as Town Manager, violated Barth's constitutional

and other rights (Count III).[1]

In its January 21, 2020 order, the court denied Barth's appeal of the ZBA's

decision (Count I). Defendants filed a motion for judgment on the pleadings pursuant

to M.R. Civ. P. 12(c) with respect to the remaining two counts on January 30, 2020.

---

[1] Although the complaint was inadvertently docketed as a real estate action, the court subsequently clarified that Count I set out an appeal of governmental action pursuant to M.R. Civ. P. 80B, and Counts II and III constituted independent claims joined with the appeal pursuant to M.R. Civ. P. 80B(i). *See* Order Addressing Pending Motions and Other Matters entered March 8, 2019. The March 8th order bifurcated the claims, directed that Count I be addressed first, and stayed consideration of Counts II and III pending resolution of Count I. The March 8th order as well as the court's January 21, 2020 order provide additional detail as to the procedural background of the instant action.

1

Several weeks later, on February 21, 2020, Barth filed a motion for summary judgment with respect to Count II. A non-testimonial hearing on the motions scheduled for April 7, 2020 was postponed due to suspension of all civil proceedings. *See* Pandemic Management Order, PMO-SJC-1, dated March 30, 2020. After further review, the court has determined that oral argument is unnecessary and the pending motions can be addressed and resolved on the basis of the pleadings and written submissions.

## I. Defendant's Motion for Judgment on the Pleadings (Counts II and III)

## A. Standard of Review

A defendant's Rule 12(c) motion for judgment on the pleadings tests the legal sufficiency of the complaint in the same manner as a Rule 12(b)(6) motion to dismiss. *Wawenock, LLC v. DOT*, 2018 ME 83, ¶ 4, 187 A.3d 609; *see* Harvey, *Maine Civil Practice*, § 12.14 (3d ed. 2011). The court considers facts alleged in the complaint in the light most favorable to plaintiff and determines whether the facts alleged entitle him to relief on some legal theory.[2] *Id.* The court is not bound to accept any legal conclusions set forth in the complaint. *Bowen v. Eastman*, 645 A.2d 5, 6 (Me. 1994). The motion will be granted when it "appears beyond a doubt that the plaintiff is not entitled to relief

---

[2] The Maine Rules of Civil Procedure require that a plaintiff's initial pleading "shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." M.R. Civ. P. 8(a). The initial pleading in this case exceeds one hundred pages, and consists of a thirty-page document styled as the complaint accompanied by three memoranda of law totaling fifty pages with an additional thirty pages of exhibits. Numerous pages in the complaint are single-spaced, not double-spaced as required by M.R. Civ. P. 5(i). Only half of the complaint's pages are organized into numbered paragraphs, and many of those paragraphs contain multiple factual allegations—not "simple, concise, and direct" averments as required by M.R. Civ. P. 8(e)(1). In addition, the three legal memoranda contain numerous factual references. Therefore, to be clear about the factual record used in addressing the instant motion, the court limits its inquiry to the averments set forth in the document styled as the complaint and not the accompanying memoranda of law. In addition, consistent with *Moody v. State Liquor & Lottery Comm'n*, the court has also considered two official public documents—its January 21, 2020 order denying Barth's 80B appeal and the ZBA's May 24, 2018 decision. 2004 ME 20, ¶¶ 8-10, 843 A.2d 43 (holding that court may rely on extra-pleading materials that are "official public documents" in deciding a motion to dismiss).

2

under any set of facts that he might prove in support of his claim." *See Bonney v. Stephens Mem'l Hosp.*, 2011 ME 46, ¶ 16, 17 A.3d 123 (articulating the motion to dismiss standard).

**B. Facts**

For purposes of the Rule 12(c) motion, the court accepts as true the following facts.

Barth is a resident of Springvale, Maine. For a number of years, he had been engaged in efforts to renovate and establish a private school on the upper campus of the former Nasson College in Springvale, a property he purchased in 1992. (Pl.'s Compl. 13.)[3] The complaint alleges that these efforts were resisted and ultimately frustrated by local residents; that his Springvale property has been the target of vandalism by teenagers and "ATV gangs" over the years; and that Lamb's son was involved in "attacks" on Barth's Springvale property. (Pl.'s Compl. 13, 16–18 .)

In 2000, Barth purchased a seven-acre island in Lake Arrowhead, located in Waterboro, with the intention of constructing a residence. Between 2004 and 2005, he obtained a building permit from the Town as well as a conservation permit from the Saco River Corridor Commission ("SRCC"), both of which were required in order to commence construction. (Pl.'s Compl. 13, 18, 19.)

During 2005 and 2006, Barth built docks on the island and the shore landing; constructed a modular shed that he transported to the island; and began excavating for, designing, and constructing concrete piers on the island. (Pl.'s Compl. 15, 19.)

In January 2007, Patti Berry, the Waterboro Code Enforcement Officer ("CEO") at the time, notified Barth that "a new permit was needed" and "she would renew the

---

[3] Because portions of Barth's complaint do not use numbered paragraphs, citations thereto reference page numbers.

3

permit herself." (Pl.'s Compl. 14, 19.) Barth asserts that "he was unaware of any permit expiration under the informal renewal process, [but] the renewed permit would have expired under the present rules on 9/16/2009."[4] Barth's construction efforts ceased in or around 2009 due to his medical condition and his loss of employment on account of the recession. (Pl.'s Compl. 23.)

Three years later, in early 2012, Barth wrote to CEO Berry and sent her drawings and photos in preparation to resume work. He received a letter from Berry's replacement, Mark Mitchell, advising Barth that his building permit had expired. Barth says he met in person with Mitchell in April 2012; gave him updated drawings; and understood Mitchell had no objection to the changes but was "still getting settled in his new position so work should proceed temporarily." (Pl.'s Compl. 26–27.)

In early August 2012, Barth wrote to CEO Mitchell "reporting the minor welding ('steel installation') at the site, the only work done since 2009." On August 22, 2012, Mitchell wrote to Barth informing him that his permit had expired and he would need a new permit to resume construction. No work was done after this notice. (Pl.'s Compl. 28.) No permit was sought during 2013 or 2014 "due to recession losses." (Pl.'s Compl. 15.)[5]

Lamb, who is also a resident of Springvale, was hired as Waterboro Town Manager in February 2014. Barth alleges that Lamb "has admitted collusion" with

---

[4] As noted below, the ZBA concluded that the 2005 permit expired in 2007 and there was no evidence that CEO Berry had extended it for an additional two years. *See infra,* p. 6. This discrepancy is ultimately immaterial to the disposition of the instant motion because Barth agrees that the original building permit expired in 2009 and the court assumes that fact to be true in deciding this motion.

[5] One page earlier, however, the complaint states: "In 2014, Plaintiff sought to renew the building permit and was met with numerous demands and denials by defendant town officials." (Pl.'s Compl. 14.) When read in context of the complaint as a whole, this reference to the year as "2014" appears to be a typographical error. Even if the 2014 date were accepted as accurate, it would not alter the court's conclusions and disposition of the instant motion.

4

others in Springvale who opposed Barth's earlier efforts to develop his property there. (Pl.'s Compl. 29.)

In December 2014, the Town hired a new CEO, Glenn Charette. Barth alleges that Charette requested new plans and drawings; "acted slowly"; and "later revealed that his plan was to obstruct the approved project by denying the permit and influencing the SRCC to deny renewal of its permit." (Pl.'s Compl. 31.)

In July and August of 2016, CEO Charette informed Barth that he needed to provide a new survey, a septic system design and building plans for the existing structure with an engineer's stamp of approval. Barth submitted an application for a new building permit with drawings as well as a new septic system design in August and a new survey in September. In late 2016, Barth "observed several small cracks in two of the four guesthouse piers, due to weathering during the period of delays." The complaint also asserts that the "cracks worsened during the following years and "[b]ecause no cracks had occurred during the eight prior years, these *may* be caused by vandalism." (Pl.'s Compl. 14, 15, 21 (emphasis added).)

In March 2017, CEO Charette wrote Barth "refusing all cooperation," meaning that the Town was insisting on compliance with the requirements of the applicable building codes as well as its requests for additional information and materials. (*See* Pl.'s Compl. 22.)

In the summer of 2017, Lamb visited Barth's property with CEO Charette. They photographed the cracks in the foundation, and Lamb took boundary markers from the site. (Pl.'s Compl. 22, 26.) Lamb's actions "were made in [his] official capacity" as the Town's manager and denied Barth the "improved property value of the subject property." (Pl.'s Compl. 7, 27.)

5

Barth wrote to the Town's Board of Selectmen In September 2017 to request that Lamb not be involved in the building permit approval process because of the animosity he had expressed about Barth. (Pl.'s Compl. 22.) Lamb responded by letter to the board, explaining his belief that Barth had frightened his young children while they were present on Barth's campus in Springvale. (Pl.'s Compl. 22.)

Barth appealed to the ZBA the CEO's decision not to issue the permit. A hearing was held in May 2018. The ZBA issued its decision on May 24, 2018, concluding that the permit issued to Barth in 2005 had expired in 2007; there was no evidence that it was extended in 2007; no new or replacement permit had been requested until 2016; the earlier 2009 IRC Building Codes had been replaced by the 2015 IRC Building Codes; a new building permit application was required to meet the new code; and CEO Charette had acted appropriately in requiring Barth to apply for a permit and provide an engineering approval for the existing peers. *See ZBA Findings of Fact and Conclusions,* dated May 24, 2018. The ZBA found specifically that CEO Charette had spoken with the engineer Barth had referred but did not hear back from the engineer and that Charette's decision to require an engineer's stamp on the proposed plans was due to the fact that no previous inspection of the work had been made. *Id.*

Barth filed this action in Superior Court in July 2018. The complaint alleges that the Town's actions were "motivated by envy and prejudice to destroy the property value of [p]laintiff and "denied realization of the developed property value" that would have resulted if Barth completed construction on his home. (Pl.'s Compl. 6, 14, 24.)

6

## C. Discussion

Barth seeks redress for alleged violations of numerous statutes as well as his rights under the Maine Constitution.[6] Barth also alleges that he had vested rights in a previously issued but expired building permit and that the Town is equitably estopped from denying him the right to continue construction on his residence. Further, the complaint seeks damages for various torts, including fraud, libel, and trespass.[7]

### 1. Statutory Claims

Barth alleges that both the Town and Lamb are liable to him for violations of the following statutes: (i) the Maine Human Rights Act ("MHRA"), 5 M.R.S. § 4551 *et seq*; (ii) the Maine Civil Rights Act ("MCRA"), 5 M.R.S. §§ 4681–4685; (iii) 17-A M.R.S. § 903, which criminalizes the "misuse of entrusted property" by a fiduciary; (iv) 30-A M.R.S. § 2632, which sets forth qualifications for a town manager; (v) 30-A M.R.S. § 3001, which sets parameters for state law preemption of municipal ordinances; and (vi) 30-A M.R.S. § 3007(6), which limits a municipality's power to restrict or nullify a final permit. In addition, he asserts that Lamb is liable for violating the following statutes in the Maine Criminal Code: (vi) 17-A M.R.S. § 151 (criminal conspiracy); (vii) 17-A M.R.S. § 152-A

---

[6] Although the complaint references potential claims under the U.S. Constitution and the Civil Rights Act, 42 U.S.C. §§ 1981-1986, including a "takings" claim under the 5th and 14th Amendments and 42 U.S.C. § 1983, it states expressly that these references are included only "[f]or purposes of notice and preservation of issues" and "*not for adjudication.*" (Pl.'s Compl. 6, 7. (emphasis added). Accordingly, any claims under federal law, whether statutory or constitutional in nature, are not before the court in this case and are not addressed.

[7] Defendants cite *Van Dyke v. Town of Dexter*, No. 1:18-cv-00263-NT, 2018 U.S. Dist. LEXIS 202055, at *3 (D. Me. Nov. 29, 2018) (*Torreson, J.*) in arguing that Barth's independent claims in Counts II and III should be dismissed because they are subsumed into the Rule 80B appeal in Count I, which previously had been dismissed. In *Van Dyke*, the plaintiff failed to file a Rule 80B appeal from the Town of Dexter's determination of a dangerous building on her property. One year later, she filed suit alleging numerous constitutional violations and torts arising out of the Town's decision. The District Court held that because these claims arose out of a common nucleus of facts and could have been brought in conjunction with a Rule 80B appeal, they were now time-barred. Here, plaintiff joined the independent claims with his Rule 80B appeal.

7

(criminal attempt); (viii) 17-A M.R.S. § 506-A (harassment), and (ix) 17-A M.R.S. § 805 (aggravated criminal mischief). These claims lack merit.

There is no private, civil remedy for alleged violations of the Maine Criminal Code, and Barth is not authorized to institute criminal proceedings or prosecute the Town or Lamb for any alleged criminal violations. *See* 15 M.R.S. §§ 701, 708. Barth has not identified any authority conferring a private right of action for the alleged violations of the sections of Title 30-A to which he cites. Barth does not have a cognizable claim under the MHRA because the allegations pleaded in the complaint do not qualify him as an "aggrieved person." 5 M.R.S. § 4621 (authorizing the filing of a civil action by an "aggrieved person"); 5 M.R.S. § 4553(1-D) (defining "aggrieved person" to include a person claiming unlawful discrimination on the basis of protected class status or injury by unlawful housing discrimination). His claims under the MCRA are addressed below in connection with the state constitutional claims.

## 2. State Constitutional Claims

Barth alleges in Counts II and III, respectively, that the Town and Lamb, acting in his official capacity as Town Manager, are liable for numerous violations of his state constitutional rights, namely Article I, Sections 1, 11, 19 and 21 of the Maine Constitution.[8]

---

[8] Article I, Section 1 provides: "All people are born equally free and independent, and have certain natural, inherent and unalienable rights, among which are those of enjoying and defending life and liberty, acquiring, possessing and protecting property, and pursuing and obtaining safety and happiness." Me. Const. art. I, § 1.

Article I, Section 11 provides: "The Legislature shall pass no bill of attainder, ex post facto law, nor law impairing the obligation of contracts, and no attainder shall work corruption of blood nor forfeiture of estate." Me. Const. art. I, § 11.

Article I, Section 19 provides: "Every person, for an injury inflicted on the person or the person's reputation, property or immunities, shall have remedy by due course of law; and right and justice shall be administered freely and without sale, completely without denial, promptly, without delay." Me. Const. art. I, § 19.

8

The exclusive means for bringing a civil action to vindicate an alleged violation of a right secured by the Constitution of Maine is 5 M.R.S. §4682. *Andrews v. Department of Envtl. Protection*, 1998 ME 198, ¶¶ 21-23, 716 A.2d 212. Section 4682(1-A) provides as follows:

> Whenever any person, whether or not acting under color of law, intentionally interferes or attempts to intentionally interfere *by physical force or violence against a person, damage or destruction of property or trespass on property or by the threat of physical force or violence against a person, damage or destruction of property or trespass on property* with the exercise or enjoyment by any other person of rights secured by the United States Constitution or the laws of the United States or of rights secured by *the Constitution of Maine*[,] . . . the person whose exercise or enjoyment of these rights has been interfered with, or attempted to be interfered with, may institute and prosecute in that person's own name and on that person's own behalf a civil action for legal or equitable relief.

5 M.R.S. § 4682 (emphasis added). To bring a civil action based on an alleged violation of a state constitutional right, therefore, a claimant must allege (i) intentional interference or an attempt to intentionally interfere (ii) with the exercise of rights secured under the Constitution of Maine (iii) by force or violence against a person; or damage or destruction of property; or trespass on property (or the threat of any of the foregoing). *Andrews* dismissed an action for declaratory, monetary, and injunctive relief to vindicate the right to free speech under Article I, Section 4 of the Constitution of Maine because the plaintiff had "not alleged interference with his speech rights *by physical force or violence, damage or destruction of property, trespass on property, or threats thereof.*" 1998 ME 198, ¶ 23, 716 A.2d 212 (emphasis added).

Essentially, the constitutional violations for which Barth seeks compensation involve the asserted denial of his rights to his property in Waterboro, particularly the right to continue construction of a residence pursuant to an expired building permit. In

---

Article I, Section 21 provides: "Private property shall not be taken for public uses without just compensation; nor unless the public exigencies require it." Me. Const. art. I, § 21.

9

other words, this is essentially a "takings" case, and the "takings" alleged is the diminishment of his property value due to the inability to build the residence which he had planned.[9]

The complaint alleges that the taking of his property was caused by imposition of standards that Barth claims amount to a bill of attainder or an *ex post facto* law; an intrusion upon his natural rights ("possessing and protecting property"); a denial of his right to redress; and/or an infringement of his "vested rights" in a previously approved building permit. He therefore contends his property was taken without just compensation and he suffered additional financial loss consisting of expenses already incurred.

The interference with the exercise of state constitutional rights asserted here and for which he seeks compensation was not predicated on the kinds of acts required by section 4682 or *Andrews*. Rather, it is based upon the Town's denial of a building permit, which frustrated Barth's ability to complete construction of his residence.

Although the complaint is replete with allegations of acts of violence and vandalism by unnamed individuals against Barth and his property, these acts are not relevant to or connected with the constitutional violations asserted. Many of the acts are alleged to have occurred in Springvale with respect to his property there, dating as far back as from 1998. (Pl.'s Compl. 16–17.) The alleged perpetrators of similar acts of

_____

[9] Generally, a claim of unconstitutional taking without payment of just compensation takes one of three forms: (1) permanent, physical occupation of property, no matter how minute the intrusion, *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 441 (1982); (2) a *per se* regulatory taking, which occurs when implementation of a regulation results in a total, permanent diminution of a property's value, *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1019 (1992); and (3) an *ad hoc* regulatory taking, which depends on a fact-specific inquiry into the diminution in value caused by the government action, the reasonableness of the landowner's investment-backed expectations for the property, and the character of the interference, *Penn. Cent. Transp. Co. v. New York City*, 438 U.S. 104, 124 (1978). *See Bell v. Town of Wells*, 557 A.2d 168, 177 (Me. 1989) (providing that rights under Art. I, section 21 of the Maine Constitution are coextensive with the Fifth Amendment).

vandalism with respect to the Waterboro property are identified as two unrelated individuals with no alleged connection to defendants as well as others described only generically as "an ATV mechanic in Waterboro," "ATV gangs," or "criminal ATV gangs." Even viewed in the light most favorable to plaintiff, only two discrete acts alleged constitute the type of predicate acts that are connected to the constitutional violations asserted here. (Pl.'s Compl. 17.)

First, the complaint alleges that Lamb trespassed on his property to photograph cracks in the foundation piers of the structure and, while there, removed boundary markers. (Pl.'s Compl. 22, 26.) It is not alleged that this act of trespass, in and of itself, caused a diminution in property value. Nor is it specifically alleged that Lamb's (or Charette's) presence on Barth's property in 2017 (the year following Charette's requirement of new engineering approvals for the piers) was the basis for the Town's denial of a new permit, which, in fact, was based on the CEO's earlier requirement (affirmed by the ZBA) that Barth's prior permit had expired and he needed to provide an engineer's approval in order to obtain a new permit. With respect to removal of the boundary markers, the complaint merely alleges that this "caus[ed] serious delays and expenses"—not a depreciation in property value that might give rise to a takings claim.[10] (Pl.'s Compl. 25.) While the alleged trespass and conversion may make out claims in tort, they do not take on a constitutional dimension.

Second, the complaint alleges "damage or destruction of property"—a potential predicate act required by Section 4682. The damage referenced are cracks in the foundation piers "due to weathering during delay periods," which first appeared in "late 2016." (Pl. Compl. 15.) The complaint alleges that this "*may* have been caused by vandalism" and "it is *probable* that defendant Lamb and his criminal ATV gang

---

[10] *See supra* footnote 9.

11

associates . . . committed numerous crimes there, deliberately caus[ing] the weathering by dousing the sides of the covered piers with water during the freezing weather." (Pl.'s Compl. 5, 25 (emphasis added).)

Even viewed in the most favorable light to plaintiff and taken as true, this allegation is legally insufficient to support the constitutional takings claim pleaded here. According to the complaint itself, CEO Charette's demand that Barth submit new engineering approvals was first made in August 2016—i.e., before the discovery of the cracks that were "due to weathering during delay periods." (Pl.'s Compl. 15.) It was the requirement of an engineering approval—which Barth declined to satisfy and which served as the basis for the ZBA's affirmance of Charette's authority to insist on compliance with the applicable building codes—that ultimately resulted in Barth's inability to move forward with construction under a new permit.

Moreover, even in the context of the instant motion, an allegation that "it is probable" that Lamb and "his ATV gangs" caused this damage is too speculative as a matter of law to state a causal connection between the observed damage in the piers and conjecture about action by Lamb and/or others. *See Grant v. Foster Wheeler, LLC,* 2016 ME 85, ¶ 12, 140 A.3d 1242 ("The mere possibility of such causation is not enough, and when the matter remains one of pure speculation or conjecture, or even if the probabilities are evenly balanced, a defendant is entitled to a judgment.").

### 3. Other Claims

#### a. Vested Rights; Equitable Estoppel

Barth claims that his right to continue construction under a previously issued but expired building permit became vested and that the Town is equitably estopped from denying his right to go forward and complete construction under his previously approved plans. The court squarely decided these issues in connection with Count I of

12

the complaint. To the extent he attempts to reassert the same arguments in Count II and Count III, he is barred by claim preclusion. *See Town of Mount Vernon v. Landherr,* 2018 ME 105, ¶ 15, 190 A.3d 249; *Norton v. Town of Long Island,* 2005 ME 109, ¶ 17–18, 883 A.2d 889.

### b. Tort Claims

Finally, any tort claims asserted (trespass, libel, fraud) are barred by the Maine Tort Claims Act ("MTCA"). The MTCA applies to tort claims against the Town, a "governmental entity" within the meaning of 14 M.R.S. §§ 8102(2), (3), as well as any such claims against Lamb, whom the complaint names as a defendant in his official capacity as Town Manager. 14 M.R.S. § 8102(1).

The MTCA requires a claimant to first provide written notice of the claim within 180 days of the date the cause of action accrues as a prerequisite for bringing a civil action in tort against a governmental entity or its employees.[11] 14 M.R.S. § 8107(1). Failure to comply with this requirement means the claimant may not proceed with suit. *Porter v. Philbrick-Gates,* 2000 ME 35, ¶ 4, 745 A.2d 996; *Smith v. Voisine,* 650 A.2d 1350, 1352 (Me. 1994). Here, the complaint does not allege that plaintiff filed any written pre-suit notice or otherwise complied with the mandatory pre-suit notice requirement; nor are there any allegations regarding a good cause basis as to why written notice could not have been filed within the period prescribed. 14 M.R.S. § 8107(1)

### IV. Plaintiff's Motion for Summary Judgment (Count II)

In light of the ruling herein granting the Town's motion for judgment on the pleadings on Count II, plaintiff's motion for summary judgment is rendered moot. Even

---

[11] Although the 180-day notice period was enlarged to 365 days in 2019, the tort claims here arose under the prior law. *See* P.L 2019, ch. 214, § 1 (effective Sept. 19, 2019).

13

if the summary judgment motion was not mooted, it would be denied for failure to comply with Maine Rules of Civil Procedure 56(e) and 56(h).[12]

In the "unique setting" of summary judgment, "strict adherence to the Rule's requirements is necessary to ensure that the process is both predictable and just." *Deutsche Bank Nat'l Trust Co. v. Raggiani*, 2009 ME 120, ¶ 7, 985 A.2d 1; *see Cach, LLC v. Kulas*, 2011 ME 70, ¶ 12, 21 A.3d 1015. Failure to abide by the requirements of Rule 56 is grounds for denying the motion. *See First Tracks Investments, LLC v. Murray, Plumb & Murray*, 2015 ME 104, ¶ 3, 121 A.3d 1279 ("[T]he court would have been well within its discretion . . . to have denied summary judgment based on the manner in which both parties availed themselves of the summary judgment process."); *Stanley v. Hancock County Comm'rs*, 2004 ME 157, ¶ 29, 864 A.2d 169 (recognizing that a court may deny a motion for summary judgment "solely on th[e] basis" that a party did not comply with

---

[12] A motion for summary judgment may be made "with or without supporting affidavits." M.R. Civ. P. 56(b). Plaintiff's statement of material facts is not supported by a separate affidavit, but the statement itself is a sworn document and therefore must meet the requirements of a sworn affidavit. *See* M.R. Civ. P. 56(e) (requiring affidavits shall "be made on personal knowledge" and "set forth such facts as would be admissible in evidence" and "[s]worn or certified copies of all papers or parts therefor referred to in an affidavit shall be attached thereto or served therewith"). The jurat's oath, averring that statements of fact are true "to the best of my knowledge and belief", does not constitute an oath or affirmation made on the basis of personal knowledge. *Platz v. Finley*, 2009 ME 55, ¶ 18, 973 A.2d 743 (clarifying that a statement made "upon information and belief" is not based on personal knowledge). Although not defective *per se* if it is apparent that the affiant had personal knowledge of the facts averred, *Peoples Heritage Sav. Bank v. Pease*, 2002 ME 82, ¶ 25, 797 A.2d 1270, it is unclear whether that is so with respect to all statements therein; and, if not, plaintiff cannot rely upon potential hearsay statements to establish the facts material to his motion. (*See, e.g.,* Pl.'s. S.M.F. ¶¶ 6, 8, 10, 12, 14, 19, 20, 21, 23.) A majority of the twenty-five numbered paragraphs in the statement of material facts do not have a supporting record citation. *See* M.R. Civ. P. 56(h)(1) (requiring each fact asserted "shall be supported by a record citation as required by paragraph (4) of this rule"). In other instances where there is a citation to an exhibit, the exhibit was not "attached thereto and served therewith." M.R. Civ. P. 56(e). Even if the exhibits referenced may have been previously submitted to the court in connection with other motions or filings, they should have been attached to the statement of material facts and served with the new filing (or at least identified with more precision) because the court has no independent duty to search for them. *See* M.R. Civ. P. 56(h)(4); *Chase Home Finance LLC v. Higgins*, 2009 ME 136, ¶ 8, 12, 985 A.2d 508; *Levine*, 2001 ME 77, ¶ 9, 770 A.2d 653 ("The court is neither required nor permitted to independently search a record to find support for facts offered by a party.").

14

M.R. Civ. P. 56(h)(1)).

The deficiencies referenced above, standing alone or in combination, would be fatal to the instant motion. *See Stanley*, 2004 ME 157, ¶ 29, 864 A.2d 169; *Levine*, 2001 ME 77, ¶ 9, 770 A.2d 653. And, as plaintiff has been previously admonished, "[u]nrepresented parties receive no special consideration and are held to the same standards as represented parties." *Bank of Am., N.A. v. Camire*, 2017 ME 20, ¶ 8, 155 A.3d 416.

## V. Order

Accordingly, for the reasons set forth above, it is hereby ordered and the entry shall be:

"Defendants Town of Waterboro and Gary Lamb's Motion for Judgment on the Pleadings is GRANTED. Counts II and III of the complaint are DISMISSED with prejudice. Plaintiff's Motion for Summary Judgment is DISMISSED as moot.

The clerk may enter this Decision and Order on Pending Motions on the docket by reference pursuant to M.R. Civ. P. 79(a).

SO ORDERED

Dated: May 26, 2020

Wayne R. Douglas
Justice, Superior Court

**ENTERED ON THE DOCKET ON:** 5/27/2020

15

STATE OF MAINE                                    SUPERIOR COURT
YORK, ss.                                         Civil Action
                                                  Docket No. AP-18-056


JOHN BARTH,                          )
                                     )
            Plaintiff,               )              DECISION AND ORDER
                                     )              ON RULE 80B APPEAL &
      v.                             )              PLAINTIFF'S MOTION FOR
                                     )              SUMMARY JUDGMENT
                                     )              (COUNT I)
TOWN OF WATERBORO et al.,            )
                                     )
            Defendants.              )


John Barth filed this action against the Town of Waterboro ("Town"), the Town

Manager, Gary Lamb, and ten unnamed individuals ("John Does 1-5" and "Jane Does

1-5"). The complaint, denominated as "Appeal of ZBA Decision and Complaint for

Damages," alleges that in 2018 the Town unlawfully denied his application for a building

permit to continue construction on a residence begun in 2005 (Count I). It further

alleges that the Town's failure to renew his permit amounts to a violation of various

state and federal constitutional rights, including an unconstitutional taking of his

property without just compensation (Count II) and that Lamb, acting in his official

capacity, abused his office and conspired with others to deprive plaintiff of his rights

(Count III).[1]  The complaint seeks reversal of the Town's denial of his application for a

building permit and an award of damages.

Pending before the court at this time are several motions, including plaintiff's

motion for summary judgment and defendants'[2] motion to dismiss (both as to Count I).

The court heard argument on these motions as well as on the merits of Count I. For the

---

[1] Although the complaint alludes to a number of legal theories within the three counts, they can
be distilled down to these contentions.

[2] For purposes of this order, "defendants" refers to the Town of Waterboro and Gary Lamb.

1

reasons set forth below, plaintiff's motion for summary judgment is denied and defendants' motion to dismiss is granted.

## I. Facts[3]

On September 9, 2005, the Town code enforcement officer ("CEO") Patty Berry issued a building permit to plaintiff authorizing construction of a "house and bunk house accessory structures" on Ossipee Overflow Island in Lake Arrowhead in North Waterboro, Lot 84 on Tax Map 13. (R. 2, 31.) The property lies within the Agricultural and Residential zoning district and is now owned by Lenox School, Inc., an entity established and controlled by plaintiff.[4] (R. 1.)

Section 2.03 of the Waterboro Building Ordinance provides that permits expire after one year from the date of issuance and requires that construction be completed within two years. (R. 47.) The 2005 permit allowed for a single, two-year extension. (R. 2.) On January 24, 2007, CEO Berry sent Barth a letter notifying him that his 2005 building permit had expired. (R. 32.) Barth did not file to renew the permit. (R. 1, 3.) Although he contends that Berry "verbally" renewed the permit, there is no evidence in the record substantiating or confirming an informal renewal.

On April 13, 2012 and again on August 22, 2012, the Town's new CEO, Mark Mitchell, sent Barth letters informing him that his permit had expired and that he would need to reapply to continue construction. (R. 33, 34.) Barth acknowledged that his

---

[3] As discussed above, plaintiff has not complied with Rule 80B(e)'s requirements regarding preparation and submission of the record for review of his appeal. Consequently, two sets of documents purporting to be the record before the Board have been filed, one by plaintiff and the other by defendants. Though substantially the same, they are not identical. Because defendants' submission is sequentially paginated (as is standard practice for ease of reference), record citations herein are made to the record filed by defendants.

[4] In November 2017, Barth conveyed title to the property to The Lenox School, Inc., a nonprofit corporation. (R. 1.) Barth is "president, sole remaining member of the Board of Trustees, and resident agent" of the corporation, (Pl.'s Br. at 4.) Under Section 2.08 of the Town's ordinance, Barth had standing to appeal.

2

permit expired in a letter to the Town on July 5, 2015. (R. 35.) In that same letter Barth indicated that he intended to apply for a new building permit that would be "substantially the same" as his prior one except for "slight enlargement to the guesthouse structure." (R. 35.)

Over one year later, on August 16, 2016, Barth applied for a new building permit. (R. 38–41.) Glen Charette, the current CEO, notified Barth by letter that his 2016 application was incomplete because it did not provide, among other things, a structural engineer's stamp of approval, a surveyor's letter confirming that the current construction exists entirely within the allowable building envelope, a method for heating the structure, or information concerning how potable water would be provided to the residence. (R. 42.) During the review process, CEO Charette discovered that the building envelope violated the Town's Shoreland Zoning Ordnance because it was eighteen inches closer to the water than what is allowed. (R. 2.) The Town notified Barth of this violation on March 3, 2017. (R. 2.) Barth has not submitted the materials requested. (R. 2.)

CEO Charette ultimately denied the 2016 permit application, a decision Barth appealed to the Waterboro Zoning Board of Appeals ("Board") on November 1, 2017.

The Board held a public hearing at which it had a quorum on May 24, 2018. Barth, CEO Charette, and four nearby property owners testified. (R. 1.) The Board voted unanimously (four to zero) to affirm the CEO's finding that Barth's original, 2005 building permit had expired and uphold requirement that Barth provide an engineer's certification for the existing piers. (R. 3.)

Barth filed the instant complaint on July 6, 2018, appealing the Board's denial of his application and seeking damages. Accompanying the thirty-page complaint were three "memoranda of law" and exhibits totaling an additional eighty-three pages.

Because a timely responsive pleading had not been filed, a default was entered

3

by the clerk upon plaintiff's request on August 8, 2018. Defendants subsequently moved to lift the default on the ground that plaintiff had not served them in accordance with the Maine Rules of Civil Procedure. Defendants' motion was granted and the default lifted. *See* 9/14/2018 Order Setting Aside Default. After being properly served, defendants filed their answer on October 9, 2018.

Thereafter, plaintiff filed numerous motions and other materials, including a "Motion to File Record for Count I" submitted on October 9, 2018 in which plaintiff asserted that he was "only today made aware that under Rule 80B(g), forwarding of the record of municipal action of which Count I is an appeal is done by the plaintiff rather than the municipality." Motion to File Record for Count I, at 2. The record of a municipal board's proceeding being appealed under Rule 80B must be filed no later than the filing of the briefs, which are due 40 days after the filing of the complaint. M.R. Civ. P. 80B(e)(1), (g). Plaintiff's deadline under Rule 80B(e) for filing a brief (and the record) had been August 15, 2018.

Defendants subsequently opposed the motion to file the record and moved for dismissal under Rule 80B(h) for failure to comply with Rule 80B's requirements regarding the filing of the record.

On October 12, 2018, plaintiff filed a document entitled, "Plaintiff Filing of Record on Appeal as assembled and attested to by Defendant Town of Waterboro." The documents submitted included a cover memo from the administrative assistant for the Board that states: "Per the verbal request of John Barth on October 10, 2018 for ZBA records of the [May 24, 2018] meeting, he reviewed and received the attached." The records consisted of approximately fifty-seven pages, which included a sign-up sheet, an agenda, an exhibit list, a copy of the 2005 permit, the 2016 application, correspondence, memos, photographs, the Board's May 24, 2018 written decision, and

4

other items. The contents are not sequentially paginated or otherwise easily referenced.

In light of the number and content of the filings made in the case as well as the apparent confusion about how to classify Barth's claims, the court issued an order on March 8, 2019 intended to clarify the nature of the proceeding, address pending motions, and establish a schedule going forward. *See* Order Addressing Pending Motions and Other Matters, dated March 8, 2019 ("March 8th Order"). The March 8th Order:

- Determined that despite being docketed as an "RE" matter, the action constituted a Rule 80B appeal (Count I) with two independent claims joined (Counts II and III).

- Stayed consideration of Count II and Count III pending resolution of Count

- Deferred ruling on defendants' motion to dismiss for plaintiff's non-compliance with Rule 80B(e) and (g) until after hearing, which was to be held "after a complete record has been submitted and the parties have briefed all issues."

- Set a briefing schedule, with the final brief (plaintiff's reply brief) due July 5th and a hearing to be set on the first date available after that date.

- Provided that "the record shall be finalized and filed" by April 18, 2019 and that "*[p]laintiff* is responsible for doing so in accordance with Rule 80B(e). March 8th Order, at 6 (emphasis added).

- Further provided that *"[i]f the parties cannot agree on the contents of the record,* each may submit materials to compose the record and may also submit, if appropriate, objections to the other's submission." *Id.* (emphasis added).

- And, emphasized that plaintiff, a self-represented litigant, is not excused from compliance with procedural rules and that, although "the court had afforded some leeway" up to this point in the case, "going forward compliance with rules

5

will be enforced." *Id.,* at 3.

On March 25, 2019, plaintiff filed a document entitled, "An "Affidavit of Continuing Organized Crime by Defendants"[5] and another entitled, "Plaintiff Filing of Record on Rule 80B Appeal for Count I of the Complaint." The latter stated, in part: "Due to dishonest counsel for defendants, no agreement as to the record is likely. Therefore the Plaintiff hereby submits the record . . . already filed in this matter, with the Plaintiff notes filed therewith, and the Plaintiff Exhibits pertaining to the Rule 80B proceedings and already so filed...." Plaintiff Filing of Record on Rule 80B Appeal, at 1.

Defendants objected to the record filed and moved again on April 16, 2019 to dismiss Count I on account of plaintiff's failure to comply with M.R. Civ. P. 80B(e) and (g) and the March 8th Order. Plaintiff did not file an opposition to the motion, but did file on April 16, 2019 a motion for summary judgment on Count I of the complaint.

On May 31, 2019, the court mailed a notice of hearing to the parties on May 31, 2019 setting the hearing for July 11, 2019 at 1:30 pm.

Pursuant to the May 31st notice, hearing was held on July 11, 2019 at 1:30 pm. Counsel for defendants appeared. Plaintiff did not appear. Defendants requested that plaintiff be defaulted as to Count I and that the independent claims in Counts II and III also be dismissed. The court took the matter under advisement and requested counsel to submit cases cited at hearing to support counsel's argument for dismissal of the two independent claims in these circumstances.

Four days later, on July 15, 2019, plaintiff filed a request for a "continuance," stating: "The Plaintiff recently returned to Maine from Massachusetts and Florida, and

---

[5] In this affidavit, plaintiff describes various acts of vandalism against property he owns in Springvale that he believes was the work of individuals having some connection with defendants. Similar claims are the subject of numerous subsequent affidavits filed in this action.

6

found the schedule of this Court, including a hearing in this matter 7/11/2019, and therefore hereby apologizes and requests that the hearing be continued so that he can be present." Request for Continuance, dated July 13, 2019.

The court scheduled and held a hearing on December 12, 2019 to address all pending motions.

## II. Discussion

Self-represented litigants are subject to the same standards as represented parties and are not afforded a "bending of the rules" or "special consideration" when it comes to following basic rules of procedure in litigation. *Clearwater Artesian Well Co., v. La Grandeur*, 2007 ME 11, ¶ 8, 912 A.2d 1252; *Brown v. Thaler*, 2005 ME 75, ¶ 9, 880 A.2d 1113; *Truman v. Browne*, 2001 ME 182, ¶ 11, 788 A.2d 168; *Dumont v. Fleet Bank of Maine*, 2000 ME 197, ¶ 13, 760 A.2d 1049; *Uotinen v. Hall*, 636 A.2d 991, 992 (Me. 1994). The March 8th Order was issued, in part, to emphasize this point and to caution plaintiff that he would be expected to comply with procedural rules going forward.

Notwithstanding this caution, plaintiff has not complied with the rules governing this proceeding. Defendants have moved to dispose of both the summary judgment motion and the Rule 80B appeal on this basis alone.[6]

---

[6] In addition, it is noted that plaintiff has not offered a good excuse for his failure to appear at the hearing on July 11th (at which defendants' counsel requested dismissal of the action). The March 8th Order clearly stated a hearing would be scheduled in this matter on the first date available after July 5, 2019, the date plaintiff's reply brief was due. A notice of hearing was sent to both parties on May 31st. At the December 12th hearing, plaintiff initially said he had not received notice because he was out of state, "otherwise I would have been here." After further discussion, it appears he, in fact, had returned to Maine at least a week or two before the July 11th hearing. He filed his reply brief on July 10th, the day before the hearing (and five days after the July 5th deadline specified in the March 8th Order). He simply has not offered a good reason for his failure to appear. On this basis alone his motion for summary judgment and Rule 80B appeal in Count I could have been dismissed, but the court has declined to do so.

## 1. Motion for Summary Judgment (Count I)

On April 16, 2019, just over a month after issuance of the March 8th Order, plaintiff filed a motion for summary judgment with respect to Count I with an incorporated memorandum of law. As filed on April 16th, the motion was not accompanied by a supporting statement of material facts as required by M.R. Civ. P. 56(h). However, plaintiff had filed earlier (on October 9, 2018) a document entitled, "Statement of Material Facts As To Which There Is No Genuine Dispute to accompany Motion for Summary Judgment" ("October SMF").

As an initial matter, summary judgment is not an appropriate remedy with respect to Count I, which is an appeal of governmental action pursuant to Rule 80B. As discussed below, Rule 80B, and in particular Rule 80B(e), prescribes the process for compilation of the record that serves as the basis for the court's review of action taken by a governmental entity whose action is being appealed.[7] A summary judgment motion is adjudicated on a different basis—a factual record formulated in accordance with M.R. Civ. P. 56(h)—and under a different legal standard.

Even if the court were to entertain the summary judgment motion, it is fatally flawed because plaintiff has not complied with the requirements of Rule 56. Parties filing summary judgment motions are expected to comply strictly with the requirements of the rules. *Deutsche Bank Nat'l Trust Co. v. Raggiani*, 2009 ME 120, ¶ 7, 985 A.2d 1 ("In the unique setting of summary judgment, strict adherence to the Rule's requirements is necessary to ensure that the process is both predictable and just.") (citation omitted).

Rule 56(h) provides: "In addition to the material required to be filed by Rule 7, a

---

[7] Plaintiff has not requested a trial on the facts under Rule 80B(d), and therefore the record on appeal in connection with Count I is confined to the record before the Board.

8

motion for summary judgment . . . shall be supported by statements of material facts as addressed in paragraphs (1), (2), (3), & (4) of this rule. M.R. Civ. P.. 56(h). Plaintiff has failed to comply with requirements of Rule 7 and Rule 56.

First, the motion fails to include the notices expressly mandated in Rule 7(b)(1)(A) and (B). *See* M.R. Civ. P. 7(b)(1)(A) (commanding that a motion for summary judgment shall include notice that opposition must be filed within 21 days unless otherwise ordered by court); 7(b)(1)(B) (requiring such a motion to include notice that any opposition must comply with the requirements of Rule 56(h)).

Second, plaintiff's motion failed to comply with Rule 56(h)(1), including the requirement that a motion for summary judgment be supported by a separate, short and concise statement of material facts and that each fact asserted "be supported by a record citation as required by paragraph (4) of this rule." M.R. CIV. P. 56(h)(1). The motion for summary judgment filed on April 16, 2019 was not accompanied by a statement of material fact, and the numbered paragraphs in the motion itself do not qualify as supported statements of fact under Rule 56(h).

While plaintiff did file the October SMF, it is defective as a supporting statement of material fact under Rule 56(h)(1). Of its twenty-six paragraphs, nineteen are unsupported by record citations. "The absence of supporting record references in the statement of material facts is fatal to a motion for summary judgment." *Levin v. R.B.K. Caly Corp.*, 2001 ME 77, ¶ 9, 770 A.2d 653. In addition, many of the remaining paragraphs that purport to cite to supporting record material still do not comply with Rule 56(h).[8]

---

[8] For example, paragraph 1 recites, "The subject property was purchased by the Plaintiff in 2001", and cites to "Exhibit 30." The exhibit is not attached. There was no "Exhibit 30" listed in the record before the Zoning Board of Appeals. Nor was an "Exhibit 30" included with other exhibits attached to the legal memoranda filed at the outset of the case with plaintiff's complaint. The document filed on March 25th entitled "Plaintiff Filing of Record on Rule 80B Appeal" included a

9

Accordingly, the motion for summary judgment is denied.

## 2. Rule 80B Appeal (Count I)

### a. Defendants' Motion to Dismiss

Rule 80B(e) explicitly states that "the parties *shall* meet in advance of the time for filing the plaintiff's brief . . . to agree on the record to be filed. M.R. Civ. P. 80B(e)(2) (emphasis added). The March 8th Order was clear that the "record" plaintiff had filed in October 2018 was not acceptable because it did not meet the requirements of Rule 80B(e). It is plaintiff's responsibility to finalize the record. M.R. Civ. P. 80B(e) ("[I]t *shall* be the plaintiff's responsibility to ensure the preparation and filing with the Superior Court of the record of proceedings of the governmental agency being reviewed[.]" (emphasis added)).

Plaintiff did not follow Rule 80B(e) and failed to comply with the court's order. His March 25th filing ("Plaintiff Filing of Record of on Rule 80B Appeal") stated that the record "already filed in this matter" in October 2018, together with "Plaintiff's notes filed therewith" and a number of exhibits, constitute the record in this case. His reason for not complying with the rule and the court's order was that "[d]ue to dishonest counsel for defendants, no agreement is likely." Plaintiff Filling of Record on Rule 80B Appeal, at 1.

The bare assertion that "no agreement as to the record is likely," without any attempt to do so on his part, is unacceptable. Defendants' counsel invited plaintiff to meet and confer regarding the record, even after having been disparaged by plaintiff's

list and description of exhibits, and this list references Exhibit 30 as having been "filed with the Complaint", along with a number of other exhibits numbered 1 through 121. Apart from the exhibits accompanying the third legal memorandum filed at that time as the complaint, no other exhibits were filed. As just noted, Exhibit 30 was not among them. Thus, despite paragraph 1's citation to an exhibit, it does not appear that this exhibit is in the record. The court has "no independent duty" to search or consider any part of the record not properly presented in compliance with Rule 56(h). M.R. Civ. P. 56(h)(4).

10

filing. Plaintiff offers no good reason for his failure to do so. His representations to the court at oral argument that he did make an effort to contact counsel are belied by the record and are not credible.

Preparation of an appropriate record for review of governmental action is a fundamental requirement for effective judicial review. Rule 80B(f) provides that "[e]xcept as otherwise ordered by statute or by order of the court . . . review shall be based upon *the record of the proceedings before the governmental agency.*" M.R. Civ. P. 80B(f) (emphasis added). The record in a Rule 80B appeal consists only of the record before the municipal board whose action is being challenged. Here, the "record" unilaterally filed by plaintiff in October 2018 purports to be materials provided to him by the Town of Waterboro, but his March 25th filing references "notes" and a number of other exhibits which may or may not have been part of the record that was before the Board. The confusion that has resulted as a consequence of plaintiff's unilateral submission of the "record" is precisely why it is imperative that parties confer in advance of filing—viz., so that it is clear what documents were actually before the Board and properly before the court on appeal.

The court has discretion to dismiss an appeal for noncompliance with Rule 80B(e). *See* M.R. Civ. P. Rule 80B(h) ("If the plaintiff fails to comply with subdivision (e) or (g) of this rule, the court may dismiss the action for want of prosecution."). Although defendants have so moved, the court declines to do so, in part because defendants have submitted a record that made it feasible to review the appeal in Count I.

### b. Merits of the Appeal

The court's review of a municipal board's decision under Rule 80B is deferential and limited. *Beal v. Town of Stockton Springs*, 2017 ME 6, ¶ 13, 153 A.3d 768. The

party appealing the decision must establish that the municipal board abused its discretion, committed an error of law, or reached findings or conclusion not supported by substantial evidence in the administrative record. *Bryant v. Town of Wiscasset*, 2017 ME 234, ¶ 11, 176 A.3d 176. In this context, "substantial evidence" exists if there is *any* evidence in the administrative record that a reasonable mind would accept as sufficient to support the municipality's conclusion. *Sproul v. Town of Boothbay Harbor*, 2000 ME 30, ¶ 8, 746 A.2d 368.

The Board concluded that Barth's last-issued building permit expired in 2007; no new or replacement permit was requested until 2016; a new building code had been adopted in the interim (2015); and any new building permit application would be required to meet the standards of the new building code. The Board further concluded that the CEO was authorized to require, and acted appropriately in this case by requiring, submission of information relevant and necessary to satisfy these standards, including submission of an engineer's certification for existing piers on the site. In support of these conclusions, the Board made a number of findings based on testimony and evidence presented at the May 24, 2018 hearing.

There is competent evidence to support the Board's findings and conclusions, and the Board did not abuse its discretion or commit an error of law. Plaintiff's initial building permit was issued in 2005. It allowed for a single, two-year extension. Plaintiff did not file to renew this permit before (or after) it expired in 2007. He was notified by letter twice in 2012 that his permit had expired and he would need to apply for and obtain a new permit in order to resume construction. He did not submit a new application until 2016. The 2016 application was properly deemed incomplete.

12

Further, plaintiff's arguments that he had a vested right to continue construction under an expired building permit and/or that the Town is equitably estopped from denying his application for a second permit fail.

The vested rights doctrine provides that a municipality may not enact a new regulation or ordinance and apply the new regulation or ordinance to defeat or invalidate an existing (i.e., unexpired) building permit issued under prior law. *See Peterson v. Town of Rangeley*, 1998 ME 192, ¶ 12 n. 3, 715 A.2d 930 (holding that rights vest when a municipality applies a *new* ordinance to an existing permit") (emphasis in original). That is not the case here. Plaintiff's permit expired in 2007—a fact of which he was well aware, having been so informed by Town officials on several occasions. He did not re-apply for *nine years*. Moreover, neither application for nor issuance of a permit, in and of itself, is sufficient to confer vested rights. *Kittery Retail Ventures, LLC v. Town of Kittery*, 2004 ME 65, ¶ 24, 856 A.2d 1183.

While bad faith or discriminatory enactment of an ordinance to prevent legal use of property may operate to confer vested rights in limited circumstances, this typically arises in situations where a municipality enacts or purports to apply a new ordinance to an existing permit and thereby constrict use of the property. That is not the case here. The record evidence here does not otherwise support such a claim of this nature. *See Kittery Retail Ventures*, 2004 ME 65, ¶¶ 24-29, 856 A.2d 1183 (reviewing case law concerning the equitable acquisition of vested rights).

The cases plaintiff cites to support his vested rights argument are inapposite or distinguishable. *See Sahl v. Town of York*, 2000 ME 180, ¶ 14, 760 A.2d 266 (holding that permittee's rights had vested because the building permit had no expiration date); *Crosby v. Belgrade*, 562 A.2d 1228, 1229 (Me. 1989) (holding that zoning board of appeals final adjudication that nonconforming lots were grandfathered from

13

subsequently enacted ordinance changes had preclusive effect on any future action by town); *Littlefield v. Lyman*, 447 A.2d 1231, 1235 (Me. 1982) (holding that applicant for subdivision approval—not a building permit—was entitled to have board evaluate application under ordinances in effect at the time the application was accepted); *Thomas v. Zoning Bd. of Appeals*, 381 A.2d 643, 647 (Me. 1978) (holding that permit applicant acquired no right to the application of a repealed zoning ordinance).

Likewise, the doctrine of equitable estoppel does not apply here. Equitable estoppel may be asserted against a governmental entity as a defense to an enforcement or other action taken by that entity. *Tarason v. Town of South Berwick*, 2005 ME 30, ¶ 16, 868 A.2d 230 (holding that equitable estoppel can be asserted against a municipality only as a defense and "cannot be used as a weapon of assault.") (citing Buker v. Town of Sweden, 644 A.2d 1042, 1044 (Me. 1994)); *see Dep't of Health & Human Servs. v. Pelletier*, 2009 ME 11, ¶ 17, 964 A.2d 630. Plaintiff seeks here to use the doctrine offensively—to compel the Town to act—rather than defensively against an enforcement action by the Town.

Even if the court applied equitable estoppel principles to this case, plaintiff could not meet the heightened burden of establishing that (1) statements of a Town official induced him to act; (2) his reliance was detrimental; and (3) the reliance was reasonable. *See Kittery Retail Ventures LLC*, 2004 ME 65, ¶ 34, 856 A.2d 1183 (holding that invocation of doctrine to estop enforcement of a zoning ordinance carries "greater burden" because "forceful policy reasons militate against restricting the enforcement of municipal zoning ordinances.") (citing *City of Auburn v. Desgrosseilliers*, 578 A.2d 712, 715 (Me. 1990)). The record simply does not support the contention that plaintiff reasonably relied to his detriment on statements or actions of the Town or its officials. Town officials explicitly, and in writing, informed plaintiff his building permit had

14

expired in January 2007, April 2012, and August 2012. As the Board found, there was no record evidence to support plaintiff's claim that former CEO Berry had given him "verbal approvals" in 2007 as to inspections and/or an informal extension of his 2005 building permit.

### III. Conclusion and Order

For the reasons set out above, the court denies plaintiff's motion for summary judgment (Count I) and Rule 80B appeal (Count I); and dismisses defendant's motion to dismiss as moot. Because consideration of Counts II and III have been stayed by the March 8th Order, the court also denies defendants' request to dismiss Counts II and III at this time without further proceedings. The court will consider any such requests going forward upon appropriate motion(s) filed by defendants.

Accordingly, it is hereby ordered and the entry shall be: "Plaintiff's Motion for Summary Judgment (Count I) is DENIED. Plaintiffs' Rule 80B appeal (Count I) is DENIED. Defendants' motion to dismiss Count I is DISMISSED as moot."

The clerk may enter this Decision and Order on Rule 80B Appeal & Plaintiff's Motion for Summary Judgment (Count I) on the docket by reference pursuant to M.R. Civ. P. 79(a).

SO ORDERED

Dated: January 21, 2020

Wayne R. Douglas
Justice, Superior Court

**ENTERED ON THE DOCKET ON:** 1/21/2020

15